**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3790-19

IN THE MATTER OF
JOSEPH CONNORS, CAMDEN
COUNTY, DEPARTMENT OF
CORRECTIONS.

_____

Argued May 24, 2022 – Decided July 7, 2022

Before Judges Currier and DeAlmeida.

On appeal from the New Jersey Civil Service Commission, Docket No. 2015-1515.

Jacqueline M. Vigilante argued the cause for appellant Joseph Connors (The Vigilante Law Firm, PC, attorneys; Jacqueline M. Vigilante and Kelly Hicks, on the briefs).

Howard L. Goldberg, First Assistant County Counsel, argued the cause for respondent Camden County Department of Corrections (Emeshe Arzón, County Counsel, attorney; Howard L. Goldberg, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Craig S. Keiser, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Joseph Connors, an officer with the Camden County Department of Corrections (CCDC), appeals from a May 1, 2020 final agency decision of the Civil Service Commission (Commission). The Commission adopted the initial decision of the administrative law judge (ALJ) entered after a hearing, upholding the CCDC's decision to demote Connors from lieutenant to corrections officer after finding he violated various rules, procedures, and standards in his role as a supervisor. We affirm.

Connors has been employed by the CCDC as a corrections officer since 1998. He was promoted to lieutenant in 2013. While investigating other corrections officers' improper use of personal cellphones while on duty, the CCDC's internal affairs (IA) unit discovered numerous text messages exchanged between corrections officers Jacob and Connors while Jacob was on duty. Connors and Jacob exchanged 142 messages between April 16, 2014, and December 30, 2014. Some of these messages contained photographs of officers sleeping on the job, racially insensitive remarks, and derogatory comments about superior female officers. Corrections officers are forbidden from bringing personal cellphones into the jail and hospital while on duty.

During the IA interview, Connors did not dispute that he authored or received the messages found on Jacob's phone; however, he stated that the

messages were sent by Jacob when Connors was off duty. He also acknowledged he did not "discourage" officers from using their personal cellphones while on hospital duty. Connors admitted knowing it was a violation of CCDC's policy to bring a cellphone into the jail and to the hospital while on duty, and that doing so constituted a breach of security. And he conceded that "he failed to take any action when he saw these clear violations of departmental policies."

The CCDC issued a preliminary notice of disciplinary action for demotion, charging Connors with: incompetency, inefficiency or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12), for violation of CCDC's rules and regulations.

Connors appealed, and the Commission referred the matter to the Office of Administrative Law. A hearing was conducted before an ALJ who issued a well-reasoned, written decision sustaining each of the charges and the CCDC's decision to demote Connors. In his decision, the ALJ also addressed Connors's evidentiary motions. In denying Connors's motion to exclude the cellphone extraction report that displayed the timestamps when Jacob sent or received a

message from Connors, the ALJ found the CCDC had complied with the procedural requirements outlined in N.J.A.C. 1:1-15.6. The judge noted that the CCDC provided an authentication affidavit from a Camden County Prosecutor's Office employee who prepared the extraction report. The employee certified that she "did not make any changes, and/or corrections to any of the text messages contained in the extraction." She transferred the extracted data to a computer disc and gave it to the IA officer. Therefore, the ALJ found Connors failed to overcome the presumption of authenticity under N.J.A.C. 1:1-15.6 and admitted the extraction report.

The ALJ found: that Connors admitted he saw photographs of officers sleeping on the job and that Jacob, on certain occasions, used his cellphone while on duty; that Connors knew corrections officers were violating the CCDC's cellphone policy and he failed to report it; and that Connors engaged in inappropriate text message and photograph exchanges with Jacob, a subordinate officer, about other subordinate and superior officers.

Therefore, the CCDC successfully proved the charge of incompetency, inefficiency or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1), and neglect of duty. N.J.A.C. 4A:2-2.3(a)(7). The ALJ noted that Connors admitted to failing to perform his duties and his failure caused detriment to the department,

A-3790-19

its personnel, and inmates. The ALJ referred to the warden's testimony that unauthorized cellphones are considered contraband and security risks and, therefore, Connors should have prohibited his subordinates from using their cellphones while on duty. The warden further stated that Connors was never "off duty from his responsibility of notifying the Department of any wrongdoing." Therefore, the ALJ found the CCDC had established that Connors violated a CCDC directive mandating the reporting of incidents in the facility.

The ALJ also outlined Connors's actions of failing to initiate an investigation after receiving Jacob's messages and his engagement in an inappropriate test message exchange. This behavior constituted conduct unbecoming a public employee in violation of N.J.A.C. 4A:2-2.3(a)(6) and Rule of Conduct (ROC) 1.2.

In addition, the ALJ found the CCDC had established other sufficient cause to discipline Connors, based on his violation of several facility rules specified in the disciplinary charges concerning supervision, departmental reports, and hospital transport and duty. He noted the deputy warden's testimony that personal cellphone use and sleeping while on duty are "safety concerns that go along with being inattentive on duty." By failing to discourage cellphone use by on-duty officers and by failing to report the infractions, the ALJ concluded

that Connors failed to properly supervise his subordinates, in violation of ROC 3.1.; undermined security, ROC 3.2.; failed to submit a necessary report, ROC 3.6.; and failed to ensure the necessary level of supervision and control of officers assigned to hospital duty, contrary to General Order 42.

In considering the imposed sanction of a two-level demotion, the ALJ found that Connors's "conduct demonstrated that [he is] unsuitable to continue in [his] role as a supervisor and [his] continuation in a supervisory position [is] inimical to the safety and security of the inmates and staff." The ALJ noted the warden's testimony that Connors lacked "the capabilities to be a leader." The warden explained at the hearing that the case against Connors is "not based on an assumption of what he should have known. It's based on the fact that he, as a supervisor, should have investigated the matter." The warden recommended the demotion "based on the fact that [she] did not have confidence in him that he could lead [their] department, supervise [their] staff." The ALJ concluded that the two-level demotion was appropriate and not barred by considerations of progressive discipline.

Connors filed exceptions to the ALJ's decision. On May 1, 2020, the Commission issued its final decision adopting the findings and conclusions of

A-3790-19

the ALJ and determining the CCDC's demotion of Connors was justified and appropriate.

On appeal, Connors contends the Commission erred in adopting and approving the ALJ's findings regarding the disciplinary charges and the demotion penalty.

Our scope of review of an administrative agency's final decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). We will not disturb the determination of the Commission absent a showing "that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019) (quoting Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)).

Decisions of administrative agencies carry with them a presumption of reasonableness. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018) (citations omitted).

A-3790-19

We see no merit in Connors's argument that the CCDC failed to authenticate the accuracy of the time stamps in the text messages, and, therefore, the ALJ erred in admitting the extracted text message evidence.

Under N.J.A.C. 1:1-15.6:

> Any writing offered into evidence which has been disclosed to each other party at least [ten] days prior to the hearing shall be presumed authentic. At the hearing any party may raise questions of authenticity. Where a genuine question of authenticity is raised the judge may require some authentication of the questioned document. For these purposes the judge may accept a submission of proof, in the form of an affidavit, certified document or other similar proof, no later than [ten] days after the date of the hearing.

The CCDC complied with the regulation. It provided Connors with copies of the report more than ten days before the hearing, thus garnering the presumption of authenticity. In addition, the CCDC presented an affidavit from a detective at the prosecutor's office who extracted the data from Jacob's cellphone and transferred it onto a computer disc. She verified she did not make any changes to any of the text messages contained in the extraction. Connors did not rebut the presumption of authenticity. The ALJ's determination to admit the extraction report was supported by the evidence in the record. See Zimmerman, 237 N.J. at 475.

A-3790-19

We also discern no error in the Commission's substantiation of the charges of failure to perform duties, conduct unbecoming a public employee, neglect of duty, and other sufficient cause stemming from the violation of CCDC's rules and regulations. The ALJ gave sufficient reasons for his findings on the charges, and the Commission's decision upholding the ALJ's determinations was not arbitrary, capricious or unreasonable.

We turn to Connors's assertion that the Commission erred by not imposing progressive discipline.

Generally, the severity of a public employee's discipline should increase incrementally. In re Herrmann, 192 N.J. 19, 33 (2007). However, progressive discipline can be waived if

> the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when [its] application . . . would be contrary to the public interest. Thus, progressive discipline has been bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property.
>
> [Ibid.]

Indeed, "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." In re Carter,

A-3790-19

191 N.J. 474, 484 (2007). Therefore "the question for the courts is whether such punishment is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." Ibid. (internal quotation marks and citations omitted).

The Commission's decision to impose the penalty of demotion is not "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Ibid. The evidence supports the Commission's finding that Connors's conduct demonstrated he was unsuitable to continue in his role as a supervisor and his continuation in a supervisory position was inimical to the safety and security of the inmates and staff. Connors's conduct related directly to his supervisory duties as lieutenant and constituted a violation of clear and unequivocal directives associated with the performance of his duties. His actions had the potential to affect the safety and security of inmates and the corrections officers under Connors's supervision. Also, contrary to Connors's assertion, the Commission did not focus on his past behavior and ongoing litigation as a reason to impose a higher punishment, nor was his history found to be persuasive enough to mitigate the discipline imposed. Instead, the Commission was concerned with the seriousness of this offense and the failure to investigate and report the incident. In light of the deference owed to the

agency's determination for appropriate discipline, we find no reason to overturn it here.  <u>Greenwood v. State Police Training Ctr.</u>, 127 N.J. 500, 513 (1992).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3790-19