NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1704-17T1

DIAMOND BEACH, LLC,

       Plaintiff,

v.

MARCH ASSOCIATES, INC.,
LOUIS MARCH, SR. and JEWEL
CONTRACTING CO., INC., and
V.A. SPATZ & SONS, INC.,

       Defendants.

_____

MARCH ASSOCIATES, INC., and
LOUIS MARCH, SR.,

       Third-Party Plaintiffs,

v.

STEWART KLEINER, EDWARD
KLEINER, LEON KLEINER, TKG
MANAGEMENT, LLC, THE KLEINER
GROUP, LLC, KNS BUILDING
RESTORATION, INC., ENVIROSCAPE,
INC., CITY/NEWARK GLASS
COMPANY, DORANT/TATROW
ASSOCIATES, INC., SEALTITE SYSTEMS,
INC., BRIAN TREMATORE PLUMBING
& HEATING, INC., ALLAN BRITEWAY
ELECTRICAL CONTRACTORS, INC.,
SLOAN & COMPANY, INC., C.A.W., LLC,

APPROVED FOR PUBLICATION

December 24, 2018

APPELLATE DIVISION

S.A. COMUNALE CO., INC., SPARTA STEEL CORPORATION, K.F. MECHANICAL, LLC, ADVANTAGE SUPPLY CORPORATION, GRAFAS PAINTING CONTRACTORS, INC., GIACOMELLI TILE, INC., and INNOVATIVE CLOSET DESIGNS, INC.,

     Third-Party Defendants.

_____

SLOAN & COMPANY, INC.,

     Fourth-Party Plaintiff-Appellant,

v.

DIAMOND BEACH, LLC and FIRST INDEMNITY OF AMERICA INSURANCE COMPANY,

     Fourth-Party Defendants-Respondents.

_____

Argued telephonically November 29, 2018 – Decided December 24, 2018

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0203-08.

Anthony J. Davis argued the cause for appellant (Nicoll Davis & Spinella, LLP, attorneys; Anthony J. Davis and Steven C. DePalma, on the briefs).

Bruce D. Meller argued the cause for respondents (Peckar & Abramson, PC, attorneys; Bruce D. Meller and Patrick T. Murray, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

In 2011, the Legislature substantially amended multiple sections of the Construction Lien Law, N.J.S.A. 2A:44A-1 to -38 (the 2011 amended CLL). This appeal requires us to decide whether N.J.S.A. 2A:44A-6(a)(1) and N.J.S.A. 2A:44A-8 (the signatory-requirement amendments) apply retroactively. We limit our holding to the retroactive effect of that part of the signatory-requirement amendments that replaced the previous mandate that a "duly authorized officer" sign a corporate construction lien. We do so because the signatory-requirement amendments, and the 2011 amended CLL in general, contain other significant changes, which potential retroactive effect are not at issue in this appeal.

Sloan & Company, Inc. (Sloan) appeals from five orders entered after Sloan filed its construction lien claim in 2008.[1] At that time, a corporate claimant – like Sloan – had to show that it "duly authorized" an officer to sign

---

[1] Sloan appealed from an October 25, 2013 order granting partial summary judgment to Diamond Beach, LLC (Diamond Beach) and First Indemnity of America Insurance Company (FIA) (collectively defendants). Sloan also appealed from a June 6, 2014 judgment discharging Sloan's construction lien; a September 26, 2014 revised order correcting clerical errors; a December 4, 2015 order awarding costs and counsel fees to Diamond Beach under N.J.S.A. 2A:44A-15; and a January 13, 2017 order denying Sloan's motion to vacate the interlocutory orders. In November 2017, Diamond Beach dismissed its remaining claim, which brought finality to the lawsuit.

its lien-claim form. After conducting a plenary hearing in 2014, the judge found that the individual who signed Sloan's lien-claim form – Robert Luderer – was not a "duly authorized officer." Instead, he was an "Accounting & Information Systems Manager," a position that Sloan maintains satisfies the signatory requirements of the new law.

In early 2016, Sloan unsuccessfully attempted to vacate all the orders, arguing for the first time that the signatory-requirement amendments applied retroactively. Sloan contended that in so amending the CLL, the Legislature was "clarifying" the meaning of "duly authorized officer." But in 2011, the Legislature did not "clarify" what it meant by "duly authorized officer"; it deleted the phrase altogether from the original text of N.J.S.A. 2A:44A-6, and required compliance with a new claim form identified in N.J.S.A. 2A:44A-8 (the Section 8 claim form).

The Section 8 claim form changed who can now sign a corporate lien claim. Under paragraph one, the signatory must be an "officer/member" of the corporate entity. And under a section entitled "Suggested Notarial for Corporate . . . Claimant," a notary must be satisfied that the signatory is a "Secretary (or other officer/manager/agent) of the Corporation." The signatory must now swear or affirm – unlike before – that he or she possesses authority

4

to act on behalf of the corporate claimant by "virtue of its By[-]laws, or Resolution of its Board of Directors."

We conclude that the signatory-requirement amendments at issue are not "curative" for purposes of retroactivity analysis. There is no basis to conclude that the Legislature eliminated the phrase "duly authorized officer" to cure defects, inadvertence, or error in the CLL or in its administration; or did so to explain the intent of that part of the CLL; or to clarify, rather than change, the signatory requirement. Instead, it deleted "duly authorized officer" from the text, and created new requirements for signing corporate construction lien claims.[2]

---

[2] In addition to removing the phrase "duly authorized officer," the Legislature created the Section 8 claim form – which is substantially different than before – by deleting the entirety of N.J.S.A. 2A:44A-6, which had read as follows:

> A lien claim shall be signed, acknowledged and verified by oath of the claimant or, in the case of a partnership or corporation, a partner or duly authorized officer thereof, and filed with the county clerk not later than 90 days following the date the last work, services, material or equipment was provided for which payment is claimed. No lien shall attach, or be enforceable under the provisions of this act and, in the case of a residential construction contract, compliance with sections 20 and 21 of this act, unless the lien claim is filed in the form, manner and within the time provided by this section and section 8 of this act, and a copy thereof served on the owner and, if any, the contractor and the subcontractor, against

(continued)

We therefore reject Sloan's retroactivity argument, and hold that the signatory section of the 2011 signatory-requirement amendments applies prospectively. We defer to the judge's factual findings at the plenary hearing, which are supported by substantial evidence in the record, and conclude that the judge correctly applied the governing law. Accordingly, we affirm the orders under review.

I.

Diamond Beach originally owned several acres of vacant land (the Property). It developed the Property as a condominium community, generally consisting of almost 100 residential units, a nine-story building, and recreational and parking facilities (the Project). Diamond Beach retained March Associates, Inc. (March) as the general contractor, who subcontracted carpentry work to Sloan. March filed a Chapter 11 Bankruptcy Petition and did not pay Sloan for the work Sloan allegedly performed on the Project. First Indemnity of America Insurance Company issued bonds to secure Sloan's lien.

When Luderer signed Sloan's lien-claim form in 2008, he did not identify himself as Sloan's "duly authorized officer." Rather, in three separate sections of the form, he referred to himself as an "Accounting & I[nformation]

(continued)
> whom the claim is asserted, pursuant to section 7 of this act.

S[ystems] Manager." Defendants filed a motion for summary judgment and argued that in 2008, N.J.S.A. 2A:44A-6 required a "duly authorized officer" to sign a corporate lien claim. Defendants contended that Luderer was a manager, not a "duly authorized officer," and therefore sought to discharge the lien because he lacked authority to sign it.

In opposition to the motion, Sloan submitted a certification from Scott Casabona, Sloan's President as of 2002. He certified that Luderer signed the lien claim as Sloan's "duly authorized corporate officer." Casabona explained further that

> Mr. Luderer was acting in this capacity on behalf of Sloan prior to the time I became President and a member of the Board of Directors. Sloan had duly authorized Mr. Luderer to act as an officer for purposes of collecting monies owed to the company[,] and [for] signing and filing construction liens on behalf of the company prior to the time that I joined Sloan.
>
> [Emphasis added.]

According to Casabona, "Luderer . . . was duly authorized by the prior President, Peter Shanley, and the Board of Directors[,] when he was [first] hired to . . . sign[] and fil[e] [Sloan's] construction lien[s] . . . ." Shanley did not produce his own certification in opposition to the motion – although he could have – and he did not have an opportunity to testify at the hearing

A-1704-17T1

because he died three months after Sloan opposed the summary judgment motion.

On the return date of the motion, the judge found that Casabona's certification created a genuine issue of material fact about whether Luderer was a "duly authorized officer," which precluded summary judgment. The judge permitted the parties to engage in discovery on that issue. She then conducted the plenary hearing.

At the plenary hearing, Casabona dealt head-on with the absence of any written corroborative evidence that verified Luderer was a "duly authorized officer." He explained that Sloan's Board of Directors did not issue written resolutions or minutes memorializing its elections of officers. For example, he testified that although Sloan "followed all of its corporate formalities in holding [the] meeting [that elected Casabona as] [P]resident," there was no written resolution reflecting that election. Likewise, when the Board first elected Casabona as Vice President, there were no resolutions or minutes confirming that election. He emphasized that this method of conducting business was "just the way [Sloan] operated."

Casabona acknowledged that Sloan's by-laws required the Board to elect officers. He testified that under Article 5, Section 1 of Sloan's by-laws – the section relating to officers – Sloan's Board of Directors was required to "elect

8

a president, a treasurer and a secretary, and it may elect such other officers including one or more vice presidents as it shall deem necessary." According to the by-laws, the election was to occur at Sloan's "regular meeting following the annual meeting of shareholders." He stated that Sloan's by-laws and certificate of incorporation did not require that the Board of Directors memorialize those elections in writing. Without any personal knowledge about the actual election, he explained that the Board elected Luderer as an officer in accordance with these practices and procedures.

Casabona then described Luderer's role at Sloan, particularly the alleged authority that Sloan had given Luderer as an officer to file and sign construction liens. Casabona said Luderer was part of Sloan's "executive team," which entitled him to participate in management, executive, and Board meetings by making presentations to shareholders and other directors. Casabona testified that Luderer reported directly to him. Casabona said that he observed Shanley interact with Luderer and watched them working together on accounts receivables, which Casabona believed led to Luderer signing Sloan's liens under Shanley's supervision. Casabona testified that when he was elected President, Shanley told him to "manage the company in the same manner." Consequently, Luderer still had weekly meetings about accounts receivables,

except he met with Casabona, who said he continued the practice of Luderer signing Sloan's construction liens allegedly as a "duly authorized officer."

Luderer also testified at the hearing. He stated that Shanley hired him in 1995 to be Sloan's credit and collections manager. Approximately three years later, he became the accounting manager. At some point before 2000, Luderer learned that Sloan's Board had allegedly elected him as a "duly authorized officer for signing and executing and pursuing construction liens." He said Shanley told him that the Board authorized him to sign its liens (although he provided no details as to the alleged conversation).[3] Luderer identified Sloan's corporate officers, but he did not identify himself as such.[4] He produced no written proof, however, that he was a corporate officer.

---

[3] Defendants objected to what Luderer said Shanley told him, but the judge overruled that objection relying on N.J.R.E. 804(b)(6) (providing a hearsay exception for "a statement made by a person unavailable as a witness because of death if the statement was made in good faith upon declarant's personal knowledge in circumstances indicating that it is trustworthy"). On appeal, defendants argued in their merits brief that the judge abused her discretion on this ruling. The judge however, stated she would admit the statements by Shanley and give them the weight that they deserved. Her ruling reflects she gave little, if any, weight to the statements. So therefore, even if there was an abuse of discretion, it was harmless.

[4] Sloan's interrogatory answers identified Luderer as an "Accounting & I[nformation] S[ystems] Manager," which Luderer certified as true. Sloan produced him for a deposition as a corporate designee – not an officer – where he listed the names of all corporate officers, except himself.

The judge rendered an oral opinion after the testimony concluded. To determine whether Luderer was a "duly authorized officer," the judge relied in part on D.D.B. Interior Contracting, Inc. v. Trends Urban Renewal Ass'n, Ltd., 176 N.J. 164 (2003). Recognizing that D.D.B. was not directly on point, the judge stated that

> [a]lthough the Court permitted the exception of validating the lien claim [in D.D.B.], it made it explicitly clear that going forward, corporations must comply with their certificates of incorporation and by[-]laws to [e]nsure that the person executing the duty of filing a construction lien must be a corporate officer.
>
> Here, again there is a dearth of supporting evidence [that] this appointment or election, . . . took place or was memorialized.
>
> [Emphasis added.]

At the hearing, Sloan did not produce any Board member who participated in the election of Luderer as a "duly authorized officer." Concluding that there was "no [written] proof" and no "direct [credible] testimony" that an election had been held giving Luderer "some sort of designation as a corporate officer," the judge granted summary judgment to defendants and discharged the lien.[5]

---

[5] Luderer testified that he remembered Shanley had written a letter to another contractor in 1998, in which Shanley had stated that Luderer had authority to sign lien waivers (not file lien claims). Although Sloan could not locate the letter, Luderer said he remembered its contents, sixteen years later. The judge

(continued)

In September 2014, the judge entered the order discharging the lien, and in December 2015, she awarded costs, expenses, and counsel fees to Diamond Beach.

Sloan did not file a timely motion for reconsideration under Rule 4:49-2. Rather, three and one-half months later, Sloan filed a motion under Rule 4:42-2, which permits the judge to certify interlocutory orders as final under certain circumstances. Sloan's counsel certified that as of March 16, 2016, the orders granting summary judgment to defendants, discharging the lien, and awarding fees to defendants were interlocutory. But Sloan did not ask the judge to certify the orders as final (for purposes of an appeal as Rule 4:42-2 contemplates).[6] Instead, Sloan sought to vacate the orders by raising for the first time its retroactivity argument.

Sloan argued the signatory-requirement amendments applied retroactively because the Legislature purportedly clarified N.J.S.A. 2A:44A-6 by requiring the person signing the lien to be an "officer/member" of the corporate claimant, instead of a "duly authorized officer." Sloan asserted that

---

(continued)
disbelieved Luderer's testimony about the letter and the purported authority Sloan had granted under it.

[6] We had already denied leave to appeal before Sloan had filed its Rule 4:42-2 motion.

A-1704-17T1

the Legislature further clarified N.J.S.A. 2A:44A-6 by creating the Section 8 claim form, which Sloan asserted required a notary be satisfied that the signatory be a "[s]ecretary (or other officer/<u>manager</u>/agent) of the [c]orporation." (Emphasis added). This was a new requirement in the 2011 claim form. The judge concluded that the Legislature did not intend to clarify the term "duly authorized officer," declined to apply the signatory-requirement amendments retroactively, and denied Sloan's motion.

## II.

We begin by addressing Sloan's argument that the signatory-requirement amendments – specifically that part dealing with the signing of a corporate-construction lien claim form – apply retroactively. We review this contention de novo, as the question of whether an amended statute applies retroactively is purely a legal one. <u>Ardan v. Bd. of Review</u>, 231 N.J. 589, 608 (2018).

"Settled rules of statutory construction favor prospective rather than retroactive application of new legislation." <u>Id.</u> at 609. We favor prospective application "based on our long-held notions of fairness and due process." <u>Id.</u> at 610. As to the standard for determining whether to apply a statute retroactively, Justice Patterson writing for the Court stated:

> We consider (1) whether the Legislature intended to give the statute retroactive application and (2) whether retroactive application will result in either an unconstitutional interference with vested rights or a

> manifest injustice. Applying the first prong of the retroactivity standard, we recognize three circumstances that justify affording a statute retroactive effect: (1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant.
>
> [Ibid. (citations omitted).]

Here, it is undisputed that the Legislature did not "express[] its intent that the [signatory change] apply retroactively, either expressly or implicitly," and there is no suggestion at all that the parties expected retroactive application. The parties focused – as we do – on whether that part of the signatory-requirement amendments dealing with the signing of a corporate lien claim were "curative."[7]

A statutory provision is curative if it is "designed to remedy a perceived imperfection in or misapplication of a statute." Id. at 611. "[A]n amendment is curative if it does not alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." Ibid. (alterations in original).

---

[7] Because we have concluded that the Legislature did not intend to apply that part of the signatory-requirement amendments under review retroactively, we need not reach the question of whether retroactive application would give rise to "either an unconstitutional interference with vested rights or a manifest injustice."

> A curative act is a statute passed to <u>cure defects in prior law</u> . . . . Generally, curative acts are <u>made necessary by inadvertence or error in the original enactment of a statute or in its administration</u>. . . . Under the "curative" exception to the general rule against retroactive application of statutes, an amendment to a statute can be given retroactive effect if it is <u>designed merely to carry out or explain the intent of the original legislation</u>.
>
> . . . [A]n amendment may be applied retroactively if it is curative and it is <u>intended to clarify rather than change the law</u>, and as long as there is no interference with vested rights or contractual obligations.
>
> [2 Sutherland, <u>Statutory Construction</u>, § 41:11 at 503-08 (7th ed. 2009) (emphasis added).]

Moreover, "a legislative amendment is not considered 'curative' merely because the Legislature has altered a statute so that it better serves public policy objectives." <u>Ardan</u>, 231 N.J. at 612.

We have previously stated "there is a clear and significant difference between an amendment intended to correct a judicial misinterpretation of an existing legislative act and one that simply improves upon an existing statutory scheme, as a matter of public policy." <u>Olkusz v. Brown</u>, 401 N.J. Super. 496, 505 (App. Div. 2008).tute it acts in good faith and seeks, by the amendment, to improve the scheme. If this was all that was required in order to meet the curative exception, every amendment would automatically be subject to retroactive application and the exception would engulf the rule of

prospectivity. This cannot be countenanced. As we have observed, there are reasons based on considerations of fairness for the rule of prospectivity. This is why the exceptions to the rule have been carefully circumscribed. To consider an enactment which 'improves' the statutory scheme (in itself a painfully subjective determination) as meeting the curative exception is at odds with the fundamental principal of fairness that new laws should not affect situations which predated them."

> [Ibid. (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 289 (App. Div. 1987)).]

Defendants maintain that the sections of the signatory-requirement amendments at issue do not cure a misinterpretation of the law. They argue that the legislative history does not mention the courts have misinterpreted the meaning of "duly authorized officer." Defendants contend that if there was any confusion – which they say did not exist – five years before Luderer had signed the lien, D.D.B. addressed, at least implicitly, the need to ensure corporations elect officers following their by-laws and certificates of incorporation. Sloan argues, however, that the signatory amendments were in response to D.D.B. and Gallo v. Sphere Construction Corp., 293 N.J. Super. 558, 566 (Ch. Div. 1996) (invalidating a lien signed by a lawyer without a

power of attorney (POA)), but there is nothing in the legislative history of the 2011 amended CLL to support Sloan's contention.

Determining retroactivity requires us to summarize briefly the evolution of the CLL and the 2011 amended CLL. In 1993, the Legislature repealed the Mechanics Lien Law, N.J.S.A. 2A:44-64 to -124, and replaced it with the CLL, effective 1994. As part of the 2011 amended CLL – not just that part of the signatory amendments at issue – the New Jersey Assembly Financial Institutions and Insurance Committee and the Senate Commerce Committee explained that the bill amending the CLL embodied the text of a 2009 New Jersey Law Revision Commission Final Report on the CLL (the NJLRC Report). Indeed, the 2011 amended CLL generally followed the substantial recommendations contained in the NJLRC Report. See NRG REMA LLC v. Creative Envtl. Sols. Corp., 454 N.J. Super. 578, 600-01 (App. Div. 2018) (acknowledging that the 2011 amended CLL generally followed the recommendations of the NJLRC Report, which did not address the reason for dropping "duly authorized officer" from the text of Section 6).[8]

The NJLRC Report thoroughly explained the overriding need for the 2011 amended CLL. The primary focus of the 2011 amended CLL was to

---

[8] Whether the Legislature clarified other sections of the comprehensive 2011 amended CLL – beyond that part of the signatory amendments under review – is not before us.

address "the statute's residential construction provisions." NJLRC Report at 2. Our case has nothing to do with residential construction provisions. The 2011 amended CLL provided much needed definitions for important terms that were absent or problematic, such as "lien claim," "lien fund," "contract," and "filing." Id. at 3. And it explained that the CLL omitted other provisions that would have "improve[d] [the] application of the [CLL];" and the CLL conflicted with "industry practice and [was] not workable or desirable." Ibid. The 2011 amended CLL, therefore, added definitions; rearranged and amplified provisions; adopted court pronouncements as to "concepts of contract price, lien fund[,] and lien claim;" defined the role of arbitrators; and modified time limits for residential construction lien claims. Id. at 4. As reflected in the NJLRC Report, the 2011 amended CLL made "it easier for participants in the construction industry to use the law." Ibid.

There is no basis to conclude that the Legislature clarified its intent as to the meaning of the phrase "duly authorized officer." The Legislature did not declare explicitly or implicitly that it intended to clarify that term. The NJLRC Report recommendations – which relate to the need to amend N.J.S.A. 2A:44A-6 and N.J.S.A. 2A:44A-8 – pertain solely to recommendations unrelated to signatory requirements for corporate construction lien claims.

18

For example, as to N.J.S.A. 2A:44A-6, the NJLRC Report states that the 2011 amended CLL modified the definition of "filing" in N.J.S.A. 2A:44A-2 to address "practical concerns, distinguishing 'lodging for record,' and making a distinction, in [N.J.S.A.] 2A:44A-6, for purposes of enforcement of [a] lien claim . . . ." Id. at 4. Along those lines, the revisions to N.J.S.A. 2A:44A-6 made "the lien claim filing procedure easier to understand [as to] [t]he distinction between 'filing' and 'lodging for record' for purposes of enforceability of the lien," and by extending the deadline for residential construction lien claims. Id. at 5.

And the Legislature substantially revised the Section 8 claim form. Under N.J.S.A. 2A:44A-6(a)(1), "[t]he lien claim form as provided by section 8 of P.L.1993, c.318 ([N.J.S.A] 2A:44A-8) shall be signed, acknowledged and verified by oath of the claimant . . . ." The Legislature dropped "duly authorized officer" from Section 6 and instead required compliance with the new Section 8 claim form, which requires corporate authorization through by-laws or board resolution. Under paragraph one of Section 8, the new form now requires an "officer/member" to sign the form. In addition, the Section 8 form now prescribes a new requirement.

> The notary must be satisfied that the signatory is "the Secretary (or other officer/manager/agent) of the Corporation (partnership or limited liability company)." N.J.S.A. 2A:44A-8 (Suggested Notarial

for Corporate or Limited Liability Claimant).  The signatory must swear or affirm before a notary that he or she possessed "authority to act on behalf of the Corporation (partnership or limited liability company) . . . ."  Ibid.  The signatory "by virtue of its By[-]laws, or Resolution of its Board of Directors (or partnership or operating agreement)" must have "executed" the lien claim.[9]  Ibid.

[NRG REMA LLC, 454 N.J. Super. at 599 (emphasis added).]

Like our conclusion as to N.J.S.A. 2A:44A-6(a)(1), there is no basis to conclude that the Legislature eliminated the phrase "duly authorized officer"

---

9  The prescribed notary's statement states in full:

> SUGGESTED NOTARIAL FOR CORPORATE OR LIMITED LIABILITY CLAIMANT:
>
> On this ___ day of ____ 20__, before me, the subscriber, personally appeared (person signing on behalf of claimant(s)) who, I am satisfied is the Secretary (or other officer/manager/agent) of the Corporation (partnership or limited liability company) named herein and who by me duly sworn/affirmed, asserted authority to act on behalf of the Corporation (partnership or limited liability company) and who, by virtue of its By[-]laws, or Resolution of its Board of Directors (or partnership or operating agreement) executed the within instrument on its behalf, and thereupon acknowledged that claimant signed, sealed and delivered same as claimant's act and deed, for the purposes herein expressed.
>
> [N.J.S.A. 2A:44A-8 (emphasis added).]

A-1704-17T1

and required compliance with the Section 8 claim form as a means to cure defects, inadvertence, or error in the CLL, or in the administration of the signatory requirement.  There exists no evidence that the Legislature did so to carry out or explain its intent as to that part of the CLL.

## III.

Sloan argues alternatively – for the first time – that the judge used the wrong test to determine whether Luderer was a "duly authorized officer." Sloan contends that the judge placed too much emphasis on the holding in D.D.B. by focusing on whether the Board of Directors complied with its certificate of incorporation or by-laws when it allegedly elected Luderer as a "duly authorized officer."  According to Sloan, the judge should have considered the totality of the evidence rather than focusing on compliance with the by-laws or certificate of incorporation.

The judge's findings are binding on appeal if they are supported by "adequate, substantial and credible evidence."  Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974).  We review a "trial [judge]'s interpretation of the law and the legal consequences that flow from established facts" de novo.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  Applying this standard, we see no error, let alone error

A-1704-17T1

that is "clearly capable of producing an unjust result." See R. 2:10-2 (applying the plain error standard to arguments not raised before the trial court).

The judge correctly applied the CLL as it existed in 2008. She recognized that N.J.S.A. 2A:44A-6 required Luderer to sign Sloan's lien as a "duly authorized officer." Acknowledging that the parties disputed whether Sloan "duly authorized" Luderer to sign the lien as an officer, the judge and parties focused the plenary hearing on whether he was such an officer, especially and importantly, because of the specific language of the Sloan lien form that he signed.

Sloan's construction lien-claim form consists of five pages. On page five, Luderer signed an "Acknowledgment of Corporation" certifying that he signed the lien as the "Accounting & I[nformation] S[ystems] Manager" (not "duly authorized officer") of Sloan, and that Sloan authorized him to do so "by a proper resolution of [Sloan's] Board of Directors." The judge focused, although not exclusively, on the nature of that purported Board resolution.

In doing so, she recognized that D.D.B. was not directly on point. In D.D.B., the Court held – under the unique facts of that case – that D.D.B. satisfied the signatory requirements of N.J.S.A. 2A:44A-6 because its sole owner executed a POA intending to confer authority to an attorney to sign its construction lien. 176 N.J. at 169-70. Here, the disputed question of fact was

22

whether Luderer was a "duly authorized officer," not whether Sloan signed a POA giving Luderer authority to sign the lien. Regardless, the claim form that Luderer signed necessitated consideration of whether the Board of Directors issued a Resolution conferring the requisite authority to act as a corporate officer.[10]

We reject Sloan's argument, raised for the first time on appeal, that the judge should have concentrated more on whether Sloan conferred authority on Luderer the way D.D.B. intended to confer authority on the attorney who signed D.D.B.'s lien. Sloan contends that the judge placed too much emphasis on its by-laws and certificate of incorporation by misinterpreting the following language in the D.D.B. opinion, which the Court issued five years before Luderer signed Sloan's lien:

> Nonetheless, we recognize that harm to a corporation or its shareholders or prejudice to interested parties may result when an individual who signs a lien claim form on behalf of a corporation is not an officer of that corporation. Accordingly, in the future when a corporation intends to appoint an attorney to sign, acknowledge and verify a lien claim, that corporation must comply with its certificate of incorporation and by[-]laws to ensure that the attorney executing those

---

[10] We note that even if the signatory requirement applied retroactively – which is not the case – Sloan would still have to demonstrate that he acted "by virtue of its By[-]laws, or Resolution of its Board of Directors." There exists sufficient credible evidence in the record to support the judge's finding that Luderer did not act accordingly.

> duties is a corporate officer. Execution of a power of attorney will be deemed inadequate to vest an attorney-in-fact with the authority of a "duly authorized officer" pursuant to N.J.S.A. 2A:44A-6.
>
> [Id. at 170.]

The judge considered Sloan's purported "resolution" not because of this language (although she certainly considered it), but rather, because of the reference to the resolution on page five of the lien itself. And she considered all the other evidence to resolve whether the Board of Directors otherwise elected Luderer as an officer and "duly authorized" him to sign the lien.

The evidence adduced at the plenary hearing demonstrated that Luderer was an Accounting & Information Systems Manager.[11] The Board of Directors did not identify Luderer in any resolution, by-law provision, or other written document as a corporate officer, or otherwise. Sloan did not memorialize in writing that it authorized Luderer to execute lien claims. Sloan's documents that required identification of corporate officers omitted Luderer's name. Although requests for classification forms (needed for classification by the Division of Property and Management) mandated identification of corporate

---

[11] Sloan belatedly raised its retroactivity argument, because the Notarial mandate in the 2011 Section 8 claim form refers to "Secretary (or other officer/manager/agent) of the Corporation." As such, Sloan argued that under that language, Luderer could sign the lien claim as a manager. But Sloan would still need to show, under paragraph one of the Section 8 claim form, that he was also an "officer/member," which it cannot do.

officers, Luderer's name was missing. Sloan produced no credible evidence to prove that the Board of Directors, as the "Acknowledgment of Corporation" form says, authorized Luderer's authority in a Board resolution. Additionally, Luderer is not listed as an officer in corporate meeting minutes, filing forms, consents of shareholders in lieu of meetings, Luderer's personnel file, or any other corporate documentation.

The judge disbelieved the testimony of Casabona and Luderer that Shanley told Luderer that the Board of Directors elected him as an officer. She concluded that no credible corroborating evidence reflected that election. The judge stated that there was no proof that "an election was ever held in which Mr. Luderer was given some sort of designation as a corporate officer authorized to bind the corporation" pursuant to Sloan's by-laws. She found that Sloan failed to prove "that there was any election of Mr. Luderer as a corporate officer in any designation or any form . . . ."

The Legislature intended the courts to stringently apply the CLL's procedural requirements. NRG REMA LLC, 454 N.J. Super. at 600; see also Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 67 (2004). The judge did just that. She recognized that the purpose of the signatory requirement of N.J.S.A. 2A:44A-6 protects a corporation and its shareholders "by restricting to a select few individuals the authority to expose the corporation to potential

25

liability" under the CLL. <u>D.D.B.</u>, 176 N.J. at 169. Consequently, the CLL required a "duly authorized officer" sign the corporate lien claim. We have no reason to disturb the judge's findings that Luderer was not a "duly authorized officer."

IV.

We review an award of attorney's fees under an abuse of discretion standard. <u>Garmeaux v. DNV Concepts, Inc.</u>, 448 N.J. Super. 148, 155 (App. Div. 2016). The judge awarded Diamond Beach's attorney's fees, pursuant to N.J.S.A. 2A:44A-15(a), which states:

> <u>If a lien claim is</u> without basis, the amount of the lien claim is willfully overstated, or the lien claim is <u>not</u> lodged for record <u>in substantially the form</u> or in the manner or at a time not <u>in accordance with this act</u>, <u>the claimant shall</u> forfeit all claimed lien rights and rights to file subsequent lien claims to the extent of the face amount claimed in the lien claim. The claimant shall also <u>be liable for all court costs, and reasonable legal expenses, including, but not limited to, attorneys' fees, incurred by the owner</u>, community association, contractor or subcontractor, or any combination of owner, community association in accordance with . . . ([N.J.S.A.] 2A:44A-3), contractor and subcontractor, in defending or causing the discharge of the lien claim. The court shall, in addition, enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim.
>
> [Emphasis added.]

The judge rejected Sloan's main contention – that it filed the construction lien "following the exact same form proscribed by statute" – and concluded that the lien was not filed "in substantially the form" required by the CLL. The judge said:

> The [CLL] specifically speaks in terms of substantial compliance with the form or in the manner, and it seems to this [c]ourt to be illogical to suggest that an invalid lien whose invalidity is based upon the failure to comply with the prescribed criteria for filing of a valid claim would not trigger the application of this statute. It is not as narrow as counsel suggests, at least in this [c]ourt's mind.

A lien does not attach or become enforceable "unless the lien claim is filed in the form, manner and within the time provided by [N.J.S.A. 2A:44A-6] and [N.J.S.A. 2A:44A-8] of [the] act." D.D.B., 176 N.J. at 167 (alterations in original). Here, Sloan did not file its lien claim in accordance with the CLL, and we therefore see no abuse of discretion by the judge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27