**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2446-23

IN THE MATTER OF THE
ESTATE OF HARRIET COHEN,
deceased.

_____

Argued April 7, 2025 – Decided August 5, 2025

Before Judges Sabatino and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000218-22.

Eric R. Breslin argued the cause for appellant Samantha O. Perelman (Duane Morris LLP, attorneys; Eric R. Breslin, Melissa S. Geller and Andrew R. Sperl, on the briefs).

Warren A. Usatine argued the cause for respondent James S. Cohen (Cole Schotz PC, attorneys; Michael D. Sirota and Warren A. Usatine, of counsel; Warren A. Usatine, Christopher P. Massaro, Jeffrey M. Sauer, and Connor M. Mannion, on the brief).

PER CURIAM

Plaintiff James S. Cohen and his niece, defendant Samantha O. Perelman, previously engaged in extensive litigation regarding Robert Cohen and his

estate.[1]  Robert, who died in 2012, was the father of plaintiff and defendant's mother, Claudia Cohen.[2]  The parties now return to this court regarding a dispute concerning one asset in the estate of Harriet Cohen (the Estate or Harriet's Estate).  Harriet, who died in 2020, was Robert's wife, plaintiff's mother, and defendant's grandmother.  The asset in dispute is the Estate's interest in property located in Palm Beach, Florida (the Palm Beach Property).  Defendant appeals from an order granting plaintiff's application for a judgment prohibiting defendant from asserting any rights to the Estate's interest in the Palm Beach Property and declaring her interest in that property to be limited to the interest she had received pursuant to the Robert B. Cohen Living Trust (Robert's

---

[1]  See Cohen as Tr. of Robert B. Cohen Living Tr. v. Perelman, Nos. A-3275-14, A-3286-14 (App. Div. Nov. 19, 2018); Est. of Cohen v. Est. of Cohen, No. A-3779-13 (App. Div. Mar. 7, 2016); Est. of Cohen v. Cohen, Nos. A-0713-10, A-0864-10, and A-0941-10 (App. Div. Oct. 3, 2013); In re Est. of Cohen, File No. 50-2012-CP-000819-XXXX-MB (Prob. Div., Palm Beach City, Fla. Feb. 21, 2012); In re Cohen, No. A-5852-08 (App. Div. July 5, 2011); In re Petition of Perelman, File No. 2318/2007 (Sur. Ct., Cnty. of N.Y. June 4, 2010); and Est. of Cohen v. Cohen, No. 09-cv-2281-JJL (D.N.J. Mar. 16, 2010); see also R. 1:36-3 (permitting citation to unpublished opinions "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law").

[2]  We use first names for ease of reading and clarity given that some of the individuals we reference have the same last name.  We mean no disrespect in doing so.

Revocable Trust).  Defendant also appeals from an order granting plaintiff's counsel-fee application.  We affirm both orders.

I.

Given that the parties are well familiar with the extensive factual and procedural background of this matter and their other litigation, we need not detail that background in full in this opinion and instead focus on information directly related to this appeal.

After Harriet died on July 5, 2020, her will was admitted to probate on July 17, 2020.  Harriet's Estate is governed by her will and the Harriet Cohen Living Trust (Harriet's Trust), both of which are dated March 9, 2007.  The third article of the will governs the disposition of Harriet's tangible personal items.  Pursuant to the fourth article of the will, the remainder of Harriet's assets are to be distributed in accordance with Harriet's Trust.  Plaintiff was appointed executor of Harriet's Estate and trustee of Harriet's Trust.

Section 3.3 of Harriet's Trust is entitled "Specific Distributions." Subsection A of that section provides:

> If my Husband survives me, my Trustee (i) shall hold in a residence marital trust all of my right, title and interest (including, without limitation, any leasehold interest and stock in cooperative housing or any leasehold interest in rented property) <u>in all of my residences located in Englewood, New Jersey, and New</u>

> York, New York, and in any other property used or occupied by me as my residence, other than Palm Beach, Florida (the "Residences") which is includible in the Trust Estate and all policies and proceeds of insurance thereon and (ii) shall pay any mortgage indebtedness or other indebtedness thereon as an administration expense as provided in Paragraph A of Section 3.1 of this Agreement. If my Husband does not survive me, my Trustee (i) shall distribute to CLAUDIA, if she survives me, or if she does not survive me, to her descendants who survive me, per stirpes, subject to Article IV of this Agreement, the Residences, and all policies and proceeds of insurance thereon . . . .

[Emphasis added.]

Section 3.6 of Harriet's Trust sets forth the "[b]enefits for [d]escendants" if Robert died before Harriet. Subsection A concerns the distribution of the trust estate if plaintiff died after Harriet. Paragraph (7) of Section 3.6(A) states:

> My Trustee shall distribute to CLAUDIA, if she is then surviving, or if she is not then surviving, to SAMANTHA PERELMAN, if she is then surviving, subject to Article IV of this Agreement, the remaining assets of the Trust Estate after the distributions provided in subparagraphs (2) through (4) of this Paragraph A. . . .

After Harriet's death, the Englewood and New York properties were sold. In accordance with Harriet's Trust, defendant received part of the proceeds from those sales. Harriet's ownership of a 21.5% undivided interest in the Palm Beach Property was disclosed in Schedule A attached to the "[f]irst intermediate

4

account of Administrator" of Harriet's Estate, purportedly covering the period from July 5, 2020, to August 9, 2021. Robert's estate held a separate 21.5% undivided interest in that property. The distribution of that interest was controlled by the terms of Robert's Revocable Trust.

The trial of the parties' litigation concerning Robert's 2009 will took seven months to complete, involved the testimony of fifty witnesses, caused the expenditure of multiple millions of dollars in legal fees, and did not end until the Supreme Court denied in 2019 the petitions for certification filed after we issued our 2018 opinion affirming the judgment. See Cohen as Tr. of Robert B. Cohen Living Tr. v. Perelman, Nos. A-3275-14, A-3286-14 (App. Div. Nov. 19, 2018) (slip op. at 3-4); Cohen as Tr. of Robert B. Cohen Living Tr. v. Perelman, 237 N.J. 187 (2019); Cohen as Tr. of Robert B. Cohen Living Tr. v. Perelman, 237 N.J. 178 (2019). In what plaintiff contends was a preemptive effort to avoid similar litigation regarding Harriet's Estate, defendant and plaintiff, individually and in his capacities as executor of Harriet's Estate and trustee of Harriet's Trust, "the Claudia Cohen Survivor Trust, dated November 2, 2001" (the Claudia Cohen Trust), and the "Samantha Owen Perelman Trust under agreement dated April 13, 1992" (the 1992 Trust), entered into a settlement agreement (the Agreement or Settlement Agreement) on September 13, 2021.

5

The Agreement addresses the distribution of certain assets from Harriet's Estate, Harriet's Trust, the Claudia Cohen Trust, and the 1992 Trust. In the Agreement, the parties confirm Robert's interest in the Palm Beach Property "was disposed of pursuant to the terms of" Robert's will and Robert's Revocable Trust.

The Agreement contains the following provisions particularly relevant to this appeal:

> 23. In consideration of the promises set forth in this Agreement, and except as otherwise expressly stated in this Agreement, Samantha and her respective trustees, agents, attorneys, heirs, beneficiaries, spouses, employees, consultants, representatives, executors, administrators, successors, predecessors and assigns (collectively, "Samantha") hereby completely release and forever discharge Jim, Robert's Estate Plan, the Marital Trusts, Harriet's Estate, Harriet's Revocable Trust, the Claudia Cohen Survivor Trust, the 1992 Trust, and the James S. Cohen Irrevocable Trust along with their respective trustees, agents, attorneys, heirs, beneficiaries, employees, spouses, consultants, representatives, executors, administrators, successors, predecessors and assigns from any and all duties to account, actions, causes of action, duties of indemnification rights, claims, debts, liabilities, obligations, costs, expenses (including attorneys' fees), liens, suits, losses, damages, judgments, and demands of any nature whatsoever, whether known or unknown, vested or contingent, without limitation (collectively, "Claims") including, but not limited to, any and all Claims that Samantha, whether directly or indirectly (by assignment, succession, acquisition or otherwise),

ever had, presently has, or may have, from the beginning of the world through the date of this Agreement.

24. Notwithstanding anything contained in this Agreement to the contrary, the Parties acknowledge that the release and discharge set forth in Paragraph 23 shall not apply to any of the following:

. . . .

(F) Samantha's rights and interest in the Palm Beach Property as set forth in Section 3.3(A)(4)(d) of Robert's Revocable Trust including, without limiting any other rights, interests or obligations that Samantha may have as expressly provided by Section 3.3(A)(4)(d), the following: (i) her right to make use of the Palm Beach Property for a period of not more than twenty-one (21) days per year; and (ii) her right to receive a portion of the sale proceeds in the event of a sale of the Palm Beach Property as provided therein. The Parties acknowledge that Samantha's portion of the proceeds of any sale shall be reduced by the amount of any and all legal fees, other professional fees and expenses described more fully in Section 3.3(A)(4)(d) of Robert's Revocable Trust and the Parties acknowledge that such fees and expenses total fifty-three million, seven-hundred forty-nine thousand, eight hundred and three dollars ($53,749,803). For the avoidance of doubt, Samantha agrees to comply with all conditions and obligations imposed upon her by section 3.3(A)(4)(d) and to refrain from asserting any Claims, rights or interests with respect to the Palm Beach Property other than as may be necessary to enforce the rights and interests provided to her by Section 3.3(A)(4)(d);

(G)   Samantha's right to receive any remaining amount of the Reserve or any other assets that are distributable to Samantha from Harriet's Estate and Harriet's Revocable Trust pursuant to this Agreement. The Parties acknowledge that Samantha is not releasing her right to receive any property to which she is entitled as a beneficiary of Harriet's Estate or Harriet's Revocable Trust.

. . . .

35.   Each Party shall bear his or her own attorneys' fees and expenses incurred in connection with the negotiation and drafting of this Agreement. If any action, suit or legal proceeding is brought by any Party to enforce or redress a breach of this Agreement, in addition to all other relief awarded by a court of competent jurisdiction, the prevailing Party shall be entitled to an award of reasonable attorney's fees and costs incurred in connection with such action, suit or legal proceeding . . . .

[Emphasis added.]

In a February 8, 2022 letter to defendant's then-lawyer, plaintiff's attorney included a "schedule identifying the Estate assets to be distributed to . . . [defendant], provided that the Estate is not forced to incur additional expenses that would diminish its value." Counsel referenced defendant's "refusal to execute the documents necessary to conclude the ancillary probate proceedings in Florida" and stated:

You have requested the Estate's formal position concerning [the Palm Beach Property]. As we

previously discussed and was the topic of our email exchange, Samantha's interest in the Palm Beach Property is limited to the rights she maintains under Section 3.3(A)(4)(d) of [Robert's Revocable Trust]. The Estate categorically rejects any assertion that Samantha is entitled to receive the Estate's 21.5% interest in the Palm Beach Property, which is instead distributed pursuant to [Harriet's Trust] . . . . Section 3.3 of the Trust specifically provides that Harriet Cohen's residences other than the Palm Beach Property pass to Samantha. It is thus readily apparent that Harriet never intended Samantha to receive any interest in the Palm Beach Property through Section 3.6.

In any event, your argument is academic. Paragraph 24(F) of the Settlement Agreement contains Samantha's express promise to "refrain from asserting any Claims, rights or interests with respect to the Palm Beach Property other than as may be necessary to enforce the rights and interest provided to her by Section 3.3(A)(4)(d)" of [Robert's Revocable Trust].

Plaintiff's counsel requested that defendant sign and return "[w]aivers relat[ed] to the ancillary probate proceedings in Florida" (ancillary probate documents) and her Florida counsel execute and submit a notice of withdrawal "for the prior proceeding she filed in connection with the Estate of Robert Cohen." Defendant did not execute those documents.

On April 29, 2022, plaintiff, individually and as executor of Harriet's Estate and trustee of Harriet's Trust, filed with an order to show cause application a verified complaint in the Probate Part, seeking a judgment

9

declaring defendant was "prohibited from asserting any claims, rights or interests with respect to [Harriet's] Estate's 21.5% interest in the Palm Beach Property in accordance with Paragraph 24(F) of the Settlement Agreement" and that she had "no claims, rights or interests to or in the Palm Beach Property except as expressly set forth in the Settlement Agreement." Plaintiff also asked the court to order defendant to sign and return the ancillary probate documents, file a notice of withdrawal dismissing the petition for administration she had filed in Florida regarding Robert's estate in Florida, award plaintiff counsel fees and costs pursuant to Paragraph 35 of the Agreement; and order that the entire controversy doctrine would not apply to preclude potential future actions by plaintiff regarding Harriet's Estate. Plaintiff alleged defendant had repudiated and breached the terms of the Agreement by wrongfully asserting she had not released any rights concerning Harriet's Estate's interest in the Palm Beach Property and had breached the implied covenant of good faith and fair dealing by refusing to execute the ancillary probate documents and file the notice of withdrawal.

In her answer to the verified complaint, defendant denied she had relinquished in the Agreement any claims to Harriet's Estate's 21.5% ownership

interest in the Palm Beach Property and that she had repudiated or breached the terms of the Agreement. She contended Paragraph 24(G) of the Agreement

> explicitly reserved all of [her] rights to any and all distributions of any kind whatsoever which she is entitled under the Will and Trust of Harriet Cohen, including, without limitation, distribution to the entire residuary estate, regardless of its composition and extent, and regardless of whether the residuary estate consist[ed], [in] whole or in part[], of an interest in the Palm Beach Property.

The court heard argument on the return date of the order to show cause. In their respective arguments, both parties contended the language of the Agreement was clear, albeit with opposite interpretations. In response to the court's inquiry about whether the parties needed to conduct discovery, plaintiff's counsel asserted no discovery was necessary and defense counsel replied discovery would be necessary if the court found ambiguity in the Agreement. The court granted defense counsel's request to further brief the case.

After hearing argument following the parties' submission of additional briefs, the court on May 1, 2023, entered an order and written opinion granting:

> [p]laintiff's application for [d]eclaratory [j]udgment prohibiting [d]efendant from asserting any claims, rights, or interests in the Estate's interest in the Palm Beach Property, and declaring that [d]efendant has no claims, rights, or interests, to or in the Palm Beach

11

Property, except for twenty-one (21) days of personal usage of the property per year, as provided for under Paragraph 24(F) of the Settlement Agreement.

The court granted plaintiff's counsel-fee application, required additional submissions on that issue, and otherwise denied without prejudice the other relief requested by plaintiff.

In its written opinion, the court concluded Paragraph 24(F) of the Settlement Agreement was specific and Paragraph 24(G) was general. Therefore, in accordance with the tenets of contract construction and interpretation, the court held the specific language of Paragraph 24(F) governed the general language of Paragraph 24(G). The court found no language in Paragraph 24(F) limited its application to Robert's Revocable Trust and Paragraph 24(G) made no mention of the Palm Beach Property. The court held:

> The mention of Section 3.3(A)(4)(d) of Robert's [Revocable] Trust in Paragraph 24(F) is in reference to the personal usage [d]efendant is retaining in the Palm Beach Property, not the ownership interest Robert's Revocable Trust held in the property.
>
> Any other result would be illogical and contrary to the plain meaning of the Settlement Agreement.
>
> Therefore, [Harriet's] 21.5% interest is not distributable to [d]efendant under Paragraph 24(G) since it was specifically waived under Paragraph 24(F).

12

The court also found defendant did not have a claim under the terms of Harriet's Trust to Harriet's Estate's 21.5% interest in the Palm Beach Property. The court held:

> It is clear [Harriet] did not intend for [d]efendant to receive the Palm Beach Property. The Palm Beach Property was excluded from the other properties bequeathed to [d]efendant which were specifically stated in Section 3.3(A) of Harriet's Revocable Trust. Defendant's assertion that the Palm Beach Property would then immediately pass to [d]efendant under the residuary clause would be wholly illogical and contradictory to [Harriet]'s intent.

After receiving the parties' submissions regarding plaintiff's counsel-fee application, hearing argument, and permitting the parties to file supplemental submissions, the court held plaintiff was entitled to $279,596.02 in counsel fees and costs in an order and written opinion it entered on March 8, 2024. The court awarded approximately $24,000 less than plaintiff had requested, finding "a small number of entries [were] either somewhat duplicative, excessive or unnecessary."

On appeal, defendant argues the court misinterpreted the Settlement Agreement in finding defendant had waived her right to Harriet's Estate's interest in the Palm Beach Property and in holding Harriet's Trust precluded her from receiving Harriet's Estate's interest in the Palm Beach Property. Defendant

13

also contends that because the court erred in those findings, we should vacate the counsel-fee award.

## II.

"A settlement agreement between parties to a lawsuit is a contract." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 475 (App. Div. 2009). The interpretation of a contract is a legal question we review de novo, giving no deference to the trial court's interpretation. JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 159-60 (App. Div. 2022). As a contract, "[a] settlement agreement is governed by basic contract principles." Quinn v. Quinn, 225 N.J. 34, 45 (2016). Thus, our review of the trial court's analysis of the Settlement Agreement is guided by "familiar rules of contract interpretation." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 615 (2020) (quoting Serico v. Rothberg, 234 N.J. 168, 178 (2018)).

"It is well-settled that [c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." Id. at 615-16 (alteration in original) (quoting In re County of Atl., 230 N.J. 237, 254 (2017)) (internal quotation marks omitted). "Contracts should be read 'as a whole in a fair and common sense manner.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)

14

(quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)). "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila, 241 N.J. at 616 (quoting Quinn, 225 N.J. at 45).

Generally, a contract should not be read to "render one of its terms meaningless." C.L. v. Div. of Med. Assistance and Health Servs., 473 N.J. Super. 591, 599 (App. Div. 2022) (quoting Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011)). However, "when both general language of a contract and specific language address the same issue, the specific language controls." Id. at 599-600; see also Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 378 (App. Div. 2017) ("Specific language in a contract controls over general language and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general." (quoting DCV Holdings, Inc. v. ConAgra, Inc., 889 A.2d 954, 961 (Del. 2005))); Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 48 (App. Div. 2010) (referencing "the well-recognized rule of construction that when two provisions dealing with the same subject matter are present, the more specific provision controls over the more

general"). "Even absent a true conflict, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." Gil, 450 N.J. Super. at 378-79 (quoting 11 Williston on Contracts § 32.10, at 744 (Lord ed., 4th ed. 2012)).

Guided by those legal principles, our de novo review of the Settlement Agreement leads us to the same conclusions the trial court reached regarding that contract. The language of the Settlement Agreement is unambiguous, and Paragraph 24(F) of the Settlement Agreement specifically addresses defendant's "rights and interest in the Palm Beach Property." Under the clear and specific language of Paragraph 24(F), the parties agreed (1) defendant's release in Paragraph 23 did not apply to defendant's "rights and interest in the Palm Beach Property as set forth in Section 3.3(A)(4)(d) of Robert's Revocable Trust," meaning defendant's right to use the Palm Beach Property twenty-one days annually and her right to receive a portion of the sale proceeds if the Palm Beach Property were sold and (2) defendant would "refrain from asserting any [c]laims, rights or interests with respect to the Palm Beach Property other than as may be necessary to enforce the rights and interests provided to her by Section 3.3(A)(4)(d)" of Robert's Revocable Trust. (Emphasis added). Because she

16

had agreed in Paragraph 24(F) to "refrain from asserting any [c]laims, rights or interest with respect to the Palm Beach Property" other than claims to enforce the limited rights to the property she had received under Robert's Revocable Trust, Harriet's Estate's 21.5% ownership interest in the Palm Beach Property did not constitute "property to which [defendant was] entitled as a beneficiary of Harriet's Estate or Harriet's Revocable Trust" under Paragraph 24(G). (Emphasis added).

Under that construction of the Settlement Agreement's language, read together, Paragraphs 24(F) and 24(G) preserve defendant's interest in the Englewood and New York properties she received under Harriet's Trust and the limited interest in the Palm Beach Property she received under Robert's Revocable Trust she otherwise would be releasing under Paragraph 23. That construction makes sense, does not create a conflict, and is consistent with the principles that govern contract interpretation.

Adoption of defendant's interpretation would render meaningless the "avoidance of doubt" provision of Paragraph 24(F). And defendant's interpretation doesn't make sense. If the parties had wanted to exclude from Paragraph 23's release language any interest defendant had in the Palm Beach Property, they could have said that simply and directly. But they didn't. The

only construction that makes sense and is consistent with the applicable principles of contract interpretation is that the parties agreed to preserve defendant's interest in the Englewood and New York properties she received under Harriet's Trust and the limited interest in the Palm Beach Property she received under Robert's Revocable Trust and that defendant would "refrain from asserting any [c]laims, rights or interest with respect to the Palm Beach Property" other than claims to enforce the limited rights to the property she had received under Robert's Revocable Trust.

Accordingly, we affirm the May 1, 2023 order. Because we agree with the trial court's interpretation of the Settlement Agreement and affirm the order on that basis, we do not need to reach defendant's argument regarding the trial court's interpretation of Harriet's Trust.

Finally, we turn to the counsel-fee award. A trial court's award of attorney's fees is reviewed under an abuse-of-discretion standard. Diamond Beach, LLC v. March Assocs., Inc., 457 N.J. Super. 265, 285 (App. Div. 2018). Defendant's challenge to the court's fee award is based solely on defendant's challenge to the court's interpretation of the Settlement Agreement. Defendant contends we should vacate the March 8, 2024 fee award because we should reverse the May 1, 2023 order. Because we affirm the May 1, 2023 order, we

A-2446-23

have no basis to vacate the March 8, 2024 fee award and, accordingly, affirm that order.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-2446-23