**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0831-19

CYNTHIA A. CORDOVA,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and BAYADA HOME
HEALTH CARE, INC.,

     Respondents.

_____

Argued September 30, 2021 – Decided October 21, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Board of Review, Department of Labor, Docket No. 174643.

Keith G. Talbot, Senior Counsel, argued the cause for appellant (Legal Services of New Jersey, attorneys; Cynthia A. Cordova on the pro se briefs).

Achchana Ranasinghe, Deputy Attorney General, argued the cause for respondent Board of Review (Andrew J. Bruck, Acting Attorney General, attorney;

Donna Arons, Assistant Attorney General, of counsel;
Achchana Ranasinghe, on the brief).

PER CURIAM

Plaintiff Cynthia Cordova appeals from a Board of Review (Board) September 24, 2019 final agency decision adopting an Appeal Tribunal's (Tribunal) determination that she was not eligible for unemployment benefits because she was unavailable for work.  See N.J.S.A. 43:21-4(c)(1).  We affirm.

The following facts are derived from the testimony presented at a telephonic hearing before the appeals examiner on July 24, 2019.  In May 2013, plaintiff began working for Bayada Home Health Care, Inc. (Bayada) as a licensed practical nurse.  From May 2013 through April 2017, plaintiff worked forty hours a week.  This work, by its nature, is not sedentary.

On March 29, 2017, plaintiff's doctor told her to restrict her hours and reduce physical exertion to avoid aggravating her preexisting medical condition from a non-work-related car accident that occurred in 2012 or 2013.  The doctor told plaintiff she should not work more than seven shifts a month, which plaintiff took to mean roughly two shifts or sixteen hours per week.  Therefore, on April 1, 2017, plaintiff requested Bayada reduce her weekly hours from forty to sixteen per week.

Plaintiff did not disclose her medical condition to Bayada when requesting reduced hours because she feared Bayada would not want to employ her any longer if they knew of her medical issues. As a result, Bayada had no knowledge of plaintiff's medical condition. According to Bayada's employee, Lynda Schanne (Schanne), Bayada believed plaintiff reduced her weekly hours in anticipation of receiving social security widow's benefits that allegedly limited the income she could earn.[1] Bayada first became aware of plaintiff's medical condition on May 21, 2017, when plaintiff filed her claim for unemployment benefits to compensate for some of the wages she lost by working fewer hours.

After plaintiff's request Bayada assigned her to a private residence where she cared for one patient. She continues to work in this capacity.

On July 6, 2017, Mohsen Kalliny, M.D. of the Regional Orthopedic Professional Association issued a report recommending plaintiff work "seven shifts a month" because it was "as much as she [could] physically tolerate." The report encouraged plaintiff to "restrict her repetitive lifting to . . . no more than the seven shifts per month." Plaintiff did not inform Bayada of this report.

---

[1] According to plaintiff she began receiving widow's benefits from the Social Security Administration on May 28, 2017.

A-0831-19

From July 9, 2017 through May 19, 2018, plaintiff sought sedentary work to supplement her part-time work with Bayada. Around July 2017, plaintiff applied to the Division of Vocational Rehabilitation to develop additional skills such as proficiency in Microsoft Office in order to find sedentary work.

Sometime between July 9, 2017 and May 20, 2018, plaintiff obtained sedentary work answering phones for a business, but the owner passed away before she could begin the employment. The business closed, and plaintiff lost the job. She never found additional sedentary work to supplement her income.

While Bayada could not offer plaintiff any home care sedentary work, it could have offered her a case caring for a child in school, which would mostly entail "just sitting in the [classroom] with them." Bayada had "a lot of cases" of that nature. Plaintiff did not pursue this option because she thought nurses who care for children in schools must carry heavy medical equipment such as an "oxygen canister" to the schools. Schanne indicated that not all children's cases require such heavy equipment.

Additionally, all Bayada's employees receive a weekly email listing available cases and hours. Plaintiff claims she never received those emails and otherwise did not seek non-sedentary work from Bayada because her doctor has not provided "clearance" for such work.

A-0831-19

On January 3, 2019, plaintiff obtained a report from Lori C. Talbot, M.D. of South Cumberland Medical Associates stating that from March 29, 2017 to July 9, 2017, and onward plaintiff could "do sedentary work without aggravation of her health[] and thus [is] available for sedentary seated work fulltime. . . ." Plaintiff never informed Bayada that she could work more hours if those hours were sedentary. Further, Bayada did not receive this report nor know of its existence until the Tribunal hearing. When the report was issued, Bayada knew only of plaintiff's medical restrictions as it related to the number of hours she could work. As a result, when plaintiff asked for more shifts at Bayada a week before the Tribunal hearing, the client service manager informed plaintiff that the company would be happy to provide plaintiff more hours if she got clearance from her doctor.

On January 30, 2019, the Deputy of the Division of Unemployment and Disability Insurance found plaintiff indefinitely ineligible for benefits as of July 9, 2017, on the ground that she was "unavailable for work."[2] Plaintiff appealed that decision on February 18, 2019.

---

[2] In Cordova v. Bd. of Rev., No. A-0773-17 (App. Div. Dec. 10, 2018) (slip op. at 1-8), this court affirmed the Board's decision that plaintiff was ineligible for unemployment benefits from May 21, 2017 through July 8, 2017, because she was unavailable for work. Subsequently, the appeals examiner remanded the

On July 24, 2019, the Tribunal held a telephonic hearing where plaintiff and Schanne provided testimony. On July 25, 2019, the Tribunal determined plaintiff was ineligible to receive unemployment benefits from July 9, 2017, through May 19, 2018, because she was not available for work as required by N.J.S.A. 43:21-4(c)(1). The Tribunal found that plaintiff's voluntary work reduction was "for a personal matter having no connection to the sole base year employer." Plaintiff appealed the Tribunal's denial of benefits on July 29, 2019.

On September 24, 2019, the Board adopted the Tribunal's findings of fact and affirmed the Tribunal's decision. This appeal followed.

On appeal, plaintiff raises the following issues for our consideration:

POINT I

APPELLANT CORDOVA SHOULD BE HELD GENUINELY ATTACHED TO THE LABOR MARKET, AVAILABLE FOR WORK, AND ELIGIBLE FOR BENEFITS.

A. THE FOCUS OF THE AGENCY ON THE APPELLANT LIMITING HER WORK TO PART TIME WORK IS IN ERROR SINCE SHE WAS SEEKING FULL TIME EMPLOYMENT IN ACCORD WITH HER HEALTH LIMITATIONS AND THE AGENCY INTERPRETATION VIOLATES THE

---

matter to the deputy to determine whether plaintiff was eligible for unemployment benefits after July 8, 2017.

6

PLAIN LANGUAGE OF THE STATUTE AND THE <u>METROMEDIA</u>[3] DOCTRINE.

B. APPELLANT CORDOVA WAS GENUINELY ATTACHED TO THE JOB MARKET, IN ADDITION TO HER WORK SEARCH, THROUGH HER APPROVAL FOR ASSISTANCE WITH THE AGENCY DIVISION OF VOCATIONAL REHABILITATION WHICH SHOULD EXEMPT HER FROM THIS REQUIREMENT.

<u>POINT II</u>

THE AGENCY ERRED AS A MATTER OF LAW IN ITS ASSESSMENT OF THE "VOLUNTARY REDUCTION" FACTS AND APPLICABLE LEGAL STANDARD FOR AVAILABILITY AND SHOULD BE REVERSED AS ARBITRARY AND CAPRICIOUS AND FAILING IN CONSTITUTIONAL DUE PROCESS AND FUNDAMENTAL FAIRNESS.

<u>POINT III</u>

THE INTERPRETATION OF THE AGENCY VIOLATES THE LEGISLATIVE PURPOSE OF THE UNEMPLOYMENT COMPENSATION LAW TO ASSIST THOSE WHO ARE UNEMPLOYED THROUGH NO FAULT OF THEIR OWN AND DESERVE BENEFITS TO AMERIOLATE HARSH CONSEQUENCES OF LOSS OF EMPLOYMENT AND LIBERAL ALLOWANCE IN FAVOR OF BENEFITS WHICH EMPLOYEES HAVE CONTRIBUTED TO THROUGH THEIR TAXES.

---

[3] <u>Metromedia, Inc. v. Dir., Div. of Tax'n</u>, 97 N.J. 313 (1984).

7

POINT IV

THE INTERPRETATION OF THE AGENCY MUST
BE REVERSED SINCE IT VIOLATES DISABILITY
PROTECTIONS AND STANDARDS APPLICABLE
TO UNEMPLOYMENT CASES.

Appellate review of final administrative agency decisions is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017). "In reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)).

"If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Brady, 152 N.J. at 210 (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). This court should give due regard to the agency's credibility findings. Logan v. Bd. of Rev., 299 N.J. Super. 346, 348 (App. Div. 1997). Unless "the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, 152 N.J. at 210. While this court grants substantial deference to an agency's finding of fact,

"to the extent [the agency's] determination constitutes a legal conclusion" this court's review is de novo. Lavezzi v. State, 219 N.J. 163, 172 (2014).

First, we reject plaintiff's argument that she was available for work because she was genuinely attached to the labor market. An individual is not eligible for unemployment compensation unless he or she "is able to work, . . . available for work, and has demonstrated [that he or she is] actively seeking work." Ford v. Bd. of Rev., 287 N.J. Super. 281, 284 (App. Div. 1996) (quoting N.J.S.A. 43:21-4(c)(1)). There is a limited exception for individuals who restrict themselves to only part-time work:

> no individual, who is otherwise eligible, shall be deemed unavailable for work or ineligible for benefits solely for the reason that the individual is available for, seeks, applies for, or accepts only part-time work, instead of full-time work, if the claim is based on part-time employment and the individual is actively seeking and is willing to accept work under essentially the same conditions as existed in connection with the employment from which the individual became eligible for benefits.
>
> [N.J.S.A. 43:21-20.1]

This court has consistently held that an individual who restricts her work availability to less than full-time employment is ineligible to receive unemployment benefits if her claim is based on full-time employment. See Edmundson v. Bd. of Rev., Div. of Emp. Sec., 71 N.J. Super. 127, 133-34 (App.

9

Div. 1961) (holding that a claimant who restricted his availability for work to part-time work was unavailable for work within the meaning of N.J.S.A. 43:21-4(c)(1)); McCoy v. Bd. of Rev., Dep't of Labor, 381 N.J. Super. 169, 171 (App. Div. 2005) (holding a claimant who reduced her work schedule to accommodate her college schedule was not available for work).

Here, the Tribunal determined plaintiff's claim for benefits was based on a year of full-time work. As defined in N.J.S.A. 43:21-19(c)(1), the "base year" is the preceding four of the last five calendar quarters completed before a claimant's benefit year. Plaintiff filed her claim for unemployment on May 21, 2017. Thus, the base year for plaintiff's eligibility is from January 1, 2016, through December 31, 2016, during which she worked for Bayada full time. Thus, the N.J.S.A. 43:21-20.1 exception is inapplicable to plaintiff's claim because it is based on her full-time employment with Bayada. When plaintiff unilaterally restricted her working despite Bayada's willingness to continue providing forty hours per week (i.e., full-time work), she made herself unavailable to work.

Next, plaintiff's alternative argument − that even if she did voluntarily reduce her work hours with Bayada, she did so with good cause – lacks merit:

> [a]n individual who leaves a job due to a physical
> and/or mental condition or state of health which does

not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability. When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.

[N.J.A.C. 12:17-9.3(b).]

To satisfy N.J.A.C. 12:17-9.3(b), an individual must demonstrate, "through uncontroverted medical evidence" that her medical condition will be "aggravated" by the conditions of her work. Israel v. Bally's Park Place, Inc., 283 N.J. Super. 1, 5 (App. Div. 1995) (citing Wojcik v. Bd. of Rev., 58 N.J. 341 (1971)). Absent such medical evidence, an individual must provide "proof . . . she notified the employer and sought an accommodation prior to resigning from the job." Ardan v. Bd. of Rev., 231 N.J. 589, 605 (2018).

Plaintiff failed to meet her burden here. The report from Regional Orthopedic does not attribute her medical condition to her work environment nor does it state her medical condition is aggravated by the conditions of her work. The report merely states seven shifts a month "is as much as she can physically tolerate." Additionally, the report from South Cumberland Medical

Associates, issued nearly two years after her unemployment claim was initially filed, states that after July 9, 2017, she was "able to do sedentary work without aggravation of her health." Neither report constitutes the necessary "uncontroverted medical evidence" showing her medical condition was aggravated by work conditions. Israel, 283 N.J. Super. at 5.

Moreover, neither report was provided to Bayada when plaintiff requested reduced hours. Although plaintiff did not resign, she testified she did not disclose her health restrictions to Bayada when requesting reduced hours. Nothing in the record suggests plaintiff tried to investigate alternative employment opportunities with Bayada before restricting her work availability.

Additionally, we reject plaintiff's contention that her pursuit of services from the Division of Vocational Rehabilitation Services program exempts her from N.J.A.C. 12:23-4.3's requirement that an individual must be actively seeking work to receive benefits. N.J.S.A. 43:21-4(c)(4)(A) provides that:

> an individual, who is otherwise eligible, shall not be deemed unavailable for work or ineligible because the individual is attending a training program approved for the individual by the division to enhance the individual's employment opportunities or because the individual failed or refused to accept work while attending such program.

12

The statute is clear that an individual must first be "otherwise eligible" for benefits. Plaintiff was not "otherwise eligible" for benefits within the meaning of N.J.S.A. 43:21-4(c)(4)(A) because she voluntarily restricted her work hours without good cause. In other words, plaintiff was not deemed ineligible for benefits "because" she was enrolled in a training program. See N.J.S.A. 43:21-4(c)(4)(A). Rather, her benefits were denied because she was not available for work when Bayada had full-time work available for her.

Finally, we reject plaintiff's argument that the agency's decision "that a claimant be deemed unavailable if they reduce hours with a current employer due to personal circumstances" meets the test for agency rulemaking as outlined in Metromedia. An agency decision constitutes rulemaking if the action:

> (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative

> regulatory policy in the nature of the interpretation of law or general policy.
>
> [Metromedia, 97 N.J. at 331-32.]

In reviewing a decision by an administrative agency, an appellate court should "defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable." Ardan, 231 N.J. at 604-05 (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). In applying this standard, the court considers "the words of the statute, affording to those words 'their ordinary and commonsense meaning.'" Id. at 604-05 (quoting In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 542 (2016)).

Here, the plain language of N.J.S.A. 43:21-4(c)(1) mandates an individual be "able to work, and is available for work, and has demonstrated to be actively seeking work" to be eligible for unemployment benefits. As detailed above, plaintiff was not available for work because she voluntarily restricted her work hours from forty to sixteen hours. Further, she did not spend a "substantial portion" of 2016, the applicable base year, working part-time. Therefore, the Board's decision did not constitute improper rulemaking because it is based on

14

A-0831-19

a reasonable interpretation of N.J.S.A. 43:21-4(c)(1) and N.J.A.C. 12:17-12.7(b)(1) consistent with unemployment case law and policy standards.

In sum, the Tribunal's factual findings and the Board's decision are substantially supported by the record are therefore not arbitrary, capricious, or unreasonable. To the extent not addressed, we conclude plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION